UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | CRIMINAL NO. 1:12-218 (JDB) |
| v.                             : | |
|                                : | **FILED** |
| TONIO CALHOUN,                 : | OCT 2 5 2012 |
| Defendant.                     : | Clerk, U.S. District & Bankruptcy Courts for the District of Columbia |

### STATEMENT OF OFFENSE

The parties in this case, the United States of America and the defendant, Tonio Calhoun, stipulate and agree that the following facts are true and accurate. These facts do not constitute all of the facts known to the parties concerning the charged offense; they are being submitted to demonstrate that sufficient facts exist that the defendant committed the offense to which he is pleading guilty, Distribution of Child Pornography, in violation of 18 U.S.C. 2252A(a)(2).

### Elements of the Offense

The essential elements of the offense of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2), are:

(1)     The defendant knowingly received or distributed a visual depiction;

(2)     The production of such visual depiction involved the use of a minor engaging in sexually explicit conduct;

(3)     Such visual depiction is of a minor engaged in sexually explicit conduct;

(4)     The defendant knew that at least one of the performers in such visual depiction was a minor and knew that the visual depiction was of such minor engaged in sexually explicit conduct; and

1

(5) The visual depiction had been either

    (a) transported in interstate or foreign commerce, or

    (b) contains material that had been transported in interstate or foreign commerce by computer or other means.

**Penalties**

Pursuant to 18 U.S.C. § 2252A(a)(2), Distribution of Child Pornography is a charge that carries a penalty of a term of imprisonment of not less than 5 years and not more than 20 years, a fine of not more than $250,000 or twice the pecuniary gain or loss, and a term of supervised release — after the prison term — of between 5 years and life. In addition, the defendant must pay a special assessment of $100 for each felony offense to the Clerk's Office for the United States District Court at the time of sentencing.

**Statement of Facts**

Leading up to April 21, 2012, Metropolitan Police Department Detective Timothy Palchak was acting in an undercover capacity as part of a multi-jurisdictional FBI/MPD Child Exploitation Task Force, operating out of a satellite office in Washington, D.C. In that capacity, Detective Palchak ("UC"), visited a website where individuals can post and/or read fictional stories about adults engaging in various sexual acts with children. Individuals may comment on the stories anonymously or with a screen name that attaches to their email address. Based on the experience of the detective in his undercover capacity, this website is frequented by individuals who have a sexual interest in children.

At approximately 8:00 p.m. on April 21, 2012, the UC observed an individual using the screen name "blackpedo," later identified as the defendant, post a comment on one of the stories on

the child sex story website. In addition, the UC observed a story posted on the website by the defendant titled "A Day Out With Mommy," about a mother sexually abusing her four-year old daughter and allowing an adult male to sexually abuse her daughter. At approximately 12:07 a.m. on April 22, 2012, the UC sent an email to the defendant, stating, "Hey, just wanted to say hey, big perv here no limits, see you on [the website] all the time thought I would say hello. Big ped here…" On April 30, 2012, the defendant responded to the UC's message and began communicating with the UC by email.

Between April 30, 2012 and May 22, 2012, the UC and the defendant had sporadic email communication. During the course of these emails, the defendant told the UC that he is 30 years old and was originally from D.C. but now lives in Florida. When the UC asked if the defendant was "active with any," meaning sexually active with any children, the defendant replied that he did not "know any" but is "keeping his eyes open for any opportunities." The UC represented to the defendant that he was sexually active with his 12 year-old daughter. The defendant asked the UC if he was a "collector," which the UC understood to mean a collector of child pornography. The UC emailed a telephone number to the defendant, and the defendant sent his telephone number to the UC by text message.

On or about May 29, 2012, the UC received information from a cooperating witness ("C1"). C1 informed the UC that the defendant had sent it videos of child pornography by email within the last month. On May 29, 2012, C1 communicated with the defendant by telephone and email while C1 was in the presence of law enforcement in the District of Columbia. During course of these communications, C1 told the defendant that it knew the UC and had previously had sexual contact with the UC's 12 year-old daughter. In addition, the defendant sent to C1's law

3

enforcement supervised email account the following three videos of child pornography:

(1) A 21 second video (file name !N1)(54).wmv) depicting a prepubescent female child, approximately 3 to 4 years-old, lying naked on a couch with her legs hanging off the edge and spread open. The child's vaginal area is exposed. The video then switches to an adult male penetrating the child's vagina with his penis.

(2) An 8 minute and 56 second video (file name !!!NE(98).3gp) depicting a prepubescent female child lying naked on her back and touching her genitalia with her finger, masturbating. An adult male penetrates the child's vagina with his penis. The video zooms in and stays focused on the genital area of both.

(3) A 6 minute and 35 second video (file name 10 jährige wird gefict(richtig gut).avi) depicting an adult male taking the underwear off of a prepubescent female child and spreading her legs apart. The video then switches to an adult male penetrating the child's vagina with his penis. The video zooms in and focuses on the genital area of both. The male then ejaculates on the child's vaginal area.

On May 30, 2012, the UC received a text message from the defendant. Between May 30, 2012, and June 13, 2012, the UC and the defendant exchanged numerous text messages. During this time, on or about June 8, 2012, the defendant came back to the D.C. area. The defendant and the UC made plans to meet in person to look and photograph young girls in public. The defendant and the UC also planned for the UC to give the defendant's resume to a few friends and try to help fix the defendant's computer.

A sampling of the text messages between the defendant and the UC, including attachments, is described herein. As set forth in detail below, the defendant sent to the UC, among other things, two images of child pornography.

- At approximately 7:04 p.m. on May 30, 2012, the defendant sent a photograph to the UC of a young girl, approximately age 8 to 10 years old, wearing clothes and sitting in a seductive pose. At approximately 7:18 p.m. on May 30, 2012, the defendant sent a text message to the UC saying, "Yeah, all bullsit aside I'd fuck her too. I hope he send more. I'd b *[sic]*".

- At approximately 3:31 p.m. on June 8, 2012, the defendant sent an image of child pornography to the UC by text message. The image was of a young girl,

> approximately 2 years of age, facing the camera with her legs spread apart. The picture was focused on her vagina.

- At approximately 4:11 p.m. on June 8, 2012, the defendant sent a photograph to the UC of a young girl, approximately age 4 or 5 years old, wearing clothes and holding a bag. The defendant communicated to the UC that this was a girl he saw at the bus station.

- At approximately 9:00 p.m. on June 9, 2012, the defendant sent a message a text message to the UC saying, "Yeah.  I don't know why in the hell I didn't think of that.  She wasn't attractive but it still would've been worth it.  Older sister was hot too.  Probably like 7 or 8.  I didn't even think to hit on the mom.  Probably just let a good opportunity slip through my fingers".

- At approximately 9:06 p.m. on June 9, 2012, the defendant sent a text message to the UC saying, "Oh and there must have been some sort of kids event downtown this morning.  When I got to metro center on the subway there were hot little bitches everywhere".

- At approximately 9:10 p.m. on June 9, 2012, the defendant sent a text message to the UC saying, "I mean I literally walked off the train and was like…son of a bitch.  You don't know where to look.  They were in every direction.  It was like sensory overload or some shit.  I gotta find out what was going on".

- At approximately 9:13 p.m. on June 9, 2012, the defendant sent a text message to the UC saying, "That sounds good.  In Florida I took walks all the time looking for girls to check out.  It's a hobby of mine".

- At approximately 8:03 p.m. on June 11, 2012, the defendant sent a text message to the UC saying, "Nice.  I love 4 yos.  Almost like a toddler but no more diapers.  They're ready".

- On June 11, 2012, the defendant and the UC exchanged text messages about getting together to go "toddler hunting."  At approximately 8:10 p.m. on June 11, 2012, the defendant sent a text message to the UC saying, "Should be able to.  With the warm weather there should be a lot of little skirts."

- At approximately 3:15 p.m. on June 12, 2012, the defendant sent a text message to the UC saying, "LOL I'm trying to ignore this hot little vid someone sent me last night.  I'm afraid if I keep watching it I won't get anything done."  At approximately 3:19 p.m. on June 12, 2012, the defendant responded to the UC's request to describe the video:  "I don't know how old she is because it doesn't show her face but her ankles are tied in the air and she's getting fucked in both holes.  It's about 2 min long."  At approximately 3:22 p.m. on June 12, 2012, the

5

defendant sent a text message to the UC saying, "He starts in her pussy then her ass then it shows him in her pussy again."

- At approximately 3:24 p.m. on June 12, 2012, the defendant sent a text message to the UC saying, "Yeah the ones with sound are great. I've got one with mom licking her 2 yo pussy".

- At approximately 3:46 on June 12, 2012, the defendant sent a text message to the UC saying, "So I'm kind of new to cp. I only just started seeing it last year and that's only because of stuff people sent me. Is it all mostly just 30 second or like 2 minute clips? I've got a couple that are 10 mind *[sic]* or a little longer but I was expecting 30 min scenes like in adult porn. I guess it doesn't work that way."

- At approximately 3:50 p.m. on June 12, 2012, the defendant sent a text message to the UC saying, "I wonder why they overedit that shit. If I made one, you'd see everything".

- At approximately 3:53 p.m. on June 12, 2012, the defendant sent a text message to the UC saying, "Well I guess I shouldn't complain. At least it's better than nothing."

- At approximately 4:31 p.m. on June 12, 2012, the defendant sent a text message to the UC saying, "You may have already seen it. But I've got this one pic of a girl with a dick in her ass she's on top in reverse cowgirl and it looks like she's having an orgasm as she fingers her pussy". At approximately 4:35 p.m. on June 12, 2012, the defendant continued his description: "The girl is blonde maybe about 9 or 10 years old."

- At approximately 4:37 p.m. on June 12, 2012, the defendant sent an image of child pornography to the UC by text message. The image was of a pre-pubescent female, approximately 9 or 10 years old, who is not wearing any clothes and is being anally penetrated by an adult male penis.

- At approximately 4:42 p.m. on June 12, 2012, the defendant sent a text message to the UC saying, "Yeah. I help but get real jealous every time I see pics like that."

- At approximately 4:46 p.m. on June 12, 2012, the defendant sent a text message to the UC saying, "I know. I keep thinking that should be my cock."

- The defendant and the UC exchanged text messages about the UC's fictional 12 year-old daughter and his purported sexual contact with her. At approximately 7:36 p.m. on June 12, 2012, the defendant sent a text message to the UC saying, "LOL I know what you mean. 12 is getting kind of up there. We need to find us something really young." At approximately 7:38 p.m. on June 12, 2012, the

defendant sent a text message to the UC saying, "Although I'd settle for a really hot 8 or 9 yo."

- At approximately 8:59 p.m. on June 12, 2012, the defendant sent a text message to the UC saying, "Had to have a little private time before my mom and her husband got home. Thankfully I had Vicky to help with that." The UC understood "Vicky" to be a reference to particular a series of child pornography videos. At approximately 11:48 p.m. on June 12, 2012, the defendant sent a text message to the UC saying, "Yeah I just found out about her last year but from what I've learned, I guess she's like a celebrity among like-minded people such as us."

- At approximately 11:54 p.m. on June 12, 2012, the defendant sent a text message to the UC regarding their plans to get together the following day: "Should be good times. I haven't seen any little ones the last couple days, it's driving me crazy".

- At approximately 12:01 a.m. on June 13, 2012, the defendant sent a text message to the UC saying, "Yeah, my phone has a pretty decent camera. I like to get pics whenever I can."

- At approximately 12:07 a.m. on June 13, 2012, the defendant sent a photograph to the UC of a girl wearing clothes and standing with her back to the camera, with the focus on her buttocks and legs. At approximately 12:09 a.m. on June 13, 2012, the defendant told the UC where he got the picture: "Little hottie I saw at the mall in Florida a month ago".

- At approximately 12:11 a.m., the defendant sent a photograph to the UC of a young girl, approximately 5 or 6 years old, wearing clothes.

- At approximately 12:11 a.m. on June 13, 2012, the defendant sent a text message to the UC saying, "I gonna miss that damn mall."

- At approximately 12:33 a.m. on June 13, 2012, the defendant sent a text message to the UC saying, "You might catch some at Pentagon city on a Saturday but there's more young professionals and teens who think they're the shit shopping there. Not enough little girls for me."

- At approximately 12:42 a.m. on June 13, 2012, the defendant sent a text message to the UC saying, "Springfield mall used to be a good one too. Especially if you like the little Spanish ones. But I heard they shut that mall down. I don't know. I haven't been in that area in years."

- The defendant and the UC exchanged text messages about the time and place of their meeting on the afternoon of June 13, 2012. At approximately 5:45 p.m. on June 13, 2012, the defendant sent a text message to the UC saying, "Alright.

7

That's okay. It'll give me time to find the place and then take a little walk to look at the little ones."

On June 13, 2012, the defendant arrived at the previously arranged meeting site in Washington, D.C. The defendant approached and greeted the UC. The defendant told the UC that he brought his laptop computer for him to fix. The defendant also stated that he brought his resume for the UC. The UC said that he would drop off the defendant's resume and that he would drop of the defendant's computer off at the UC's place. The UC told him that they could then walk around and "look." The UC and the defendant began walking. The UC asked the defendant if he found "anything good." The defendant stated that he was "following a girl with a pink skirt on, she was about 8 years old, and she looked hot as hell." The UC made a prearranged signal and the defendant was arrested by members of the Child Exploitation Task Force.

Following his arrest, the defendant waived his Miranda rights and agreed to be interviewed by law enforcement. Among other things, the defendant admitted that he emailed child pornography to the UC and other people. The defendant admitted to having child pornography videos on his cellular telephone. The defendant admitted to having a sexual interest in children as young as 2 to 3 years-old, up to 11 or 12 years-old.

The defendant gave consent for law enforcement to search three of his email addresses, his cellular telephone, laptop computer, and a thumb drive. Upon a preliminary review of the defendant's cellular telephone, law enforcement identified approximately 25 videos of child pornography. Upon a preliminary review of the defendant's laptop computer, law enforcement identified at least 2 videos of child pornography and at least 2 images of child pornography. Law enforcement found evidence – names of deleted files, for example – that other videos and/or images of child pornography had been viewed on the defendant's computer. Upon a preliminary

8

review of the defendant's email accounts, law enforcement identified approximately 59 videos of child pornography and approximately 330 images of child pornography, including the following:

- A 1 minute and 26 second video (file name !2yo + mom+dad..-4_xvid.avi) depicting a prepubescent female child, approximately 2 years-old, lying naked on her back with her legs open exposing her vaginal area. A naked adult female is shown licking the child's vaginal area. The video then changes to a naked adult male penetrating the child's vagina with his penis. The man is on top of the child and his face cannot be scene.

- A 3 minute and 33 second video (file name (1) Kait 4Yo – Sweet Sugar.avi) depicting a prepubescent female child, approximately 4 years-old, lying on her back with her underwear pulled down. An adult hand, which appears to be male, is seen helping the child spread her vagina open as the camera zooms in and focuses on her vagina for several seconds. The hand then digitally penetrates the child's vagina. The video switches to showing the child trying to put an adult male penis into her vagina. The man penetrates the child's vagina with his penis. The man penetrates the child's mouth with his penis. The man then masturbates until he ejaculates on the child's face.

- An image (file name ptweleccptd.jpeg) depicting a prepubescent female child sitting with her legs spread apart. Two clips are attached to her vaginal area and appear to be connected to a device that would be used to shock her. There is a caption at the top of the photo that reads, "On her ninth birthday, Master gave her a new toy…." There is also a caption at the bottom that reads, "Punished Girl (c)."

- An image (file name !FuckBaby!.jpeg) depicting what appears to be an infant female child whose legs are being held apart. An adult male penis penetrates the vagina of the child. The image is focused on the genital areas of both.

- An image (file name mar32017.jpeg) depicting a prepubescent female child on her hands and knees on a bed. Her hands are tied to the bed with what appears to be white rope. A purple object is stuck in her vaginal area.

The following are a sampling of the file names of other videos of child pornography on the defendant's email accounts:

- -!PTHC Donna Pedo

- ((hussyfan)) – little girl takes off panites, gets vagina su(2)

- ((hussyfan))lada_9yr_fuck_on_bed(2)(2)

- (pthc frifam lolifuck) 11yo Miranda sucks dads big cock and masturbates (New 2012)
- (Pthc – Jho – Lolifuck) 8 yo Shanice (1) Man Wanks Over Her Ass – New 2009
- [Spank] wespank[1].net Real punishment of children – 223 Vid&_65533
- 46.!!! NEW 0602 !!! Privado warrier dad making daughter gag
- 2012 4yo Princess Film 0008 [exclusive trade only]
- Pthc 2012 9y footjob-handjob
- y n g on webcam

The following are a sampling of the file names of other images of child pornography on the defendant's email accounts:

- ! yng niece 008
- !!!! make it fit daddy
- 03eatcum
- 04YRGIRL
- 04becky09 – I share child porn 2
- preteenpussy

        Respectfully submitted,

        RONALD C. MACHEN JR.
        UNITED STATES ATTORNEY

        */s/ CKPinegar*
        Cassidy Kesler Pinegar
        Assistant United States Attorney

DEFENDANT'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 10/25/12

Tonio Calhoun
Defendant

ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense, and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 10/25/12

Nathan I. Silver, Esq.
Attorney for Tonio Calhoun